[No. 1494.]

## J. A. BOLES *v*. THE STATE.

1. INDICTMENT—JOINDER OF SEVERAL OFFENSES.—Before the revision of the codes, it was permissible to charge two or more offenses in separate counts of the same indictment; and the further rule was, that when the charges were substantially for the same offense, and the several counts were introduced for the purpose of meeting the evidence as it might transpire, the State was not required to elect upon which count to proceed.  And the Revised Code of Procedure provides that "an indictment or information may contain as many counts charging the same offense as the attorney who prepares it may think necessary to insert, and an indictment or information shall be sufficient if any one of its counts be sufficient."  See Code of Criminal Procedure, Article 433.

2. SAME—PRACTICE.—An indictment which, in separate counts, charges forgery and the utterance of a forged instrument knowing it to be forged, is not vulnerable to a motion to quash upon the ground that it is duplicitous and charges two offenses; nor is it obnoxious to the objection that two distinct and separate felonies are charged in the same indictment. See the opinion *in extenso* on the question.

3. SAME—FORGERY—CASE STATED.—After the evidence was concluded, the State elected to claim a conviction under the second count, and abandoned the first only so far as to disclaim a conviction under it, and it was not stricken out. Objection is made that thereby the second count was rendered insufficient of itself, and did not charge any offense, and could be made sufficient only by reference to and supplying its defects from the allegations in the abandoned first count. *Held*, that, not having been stricken out or abandoned for any purpose other than that stated, the first count was still for all other purposes a part of the indictment, and was competent, if it could, to supply the deficiencies, if any, in the second count. See the opinion *in extenso* on the question.

4. SAME.—It is contended that the judgment is erroneous because it was shown by the evidence that the forged instrument was not dated when it was offered to the prosecuting witness, and that, before he accepted it, he dated it by agreement with the defendant. *Held*, that a date not being indispensable to an instrument creating a pecuniary obligation, and the forged instrument in question being such as that, had it been genuine, it would have created a pecuniary obligation on the maker, the objection is not tenable.

APPEAL from the District Court of Stephens. Tried below before the Hon. T. B. Wheeler.

The first count in the indictment charged that, in the county of Stephens, State of Texas, on the eighth day of November, 1882, the appellant forged an instrument, which reads as set out in *hæc verba* as follows:

" *Mr. Marberry:*
    "Sir:· Please pay to the barera $56.50 on my acct and oblige
        " J. A. Boles.                              " W. B. MONROE."

The name of " J. A. Boles" being an endorsement on the back. The second count charged an attempt to pass the said instrument upon W. F. Marberry. The verdict of the jury found the defendant guilty upon the last count, and fixed his punishment at a term of two years in the penitentiary.

W. F. Marberry testified that he resided in the town of Breckenridge, Stephens county, Texas, and was a member of the firm of Marberry & Son, merchants and dealers in exchange. On

the eighth day of November, 1882, the defendant presented to the witness, in his office, an order for fifty-six dollars and a half, purporting to have been executed by W. B. Monroe. The witness examined the order, and, observing that it bore no date, called that fact to the attention of the defendant, who replied, "Yes, Mr. Monroe forgot to date it." The witness, believing the order genuine and all right, wrote the date, "Nov. 8, 1882," on it, and paid to the defendant the amount it called for, fifty-six dollars and a half, and the defendant wrote the endorsement, "J. A. Boles," across the back. This amount the witness charged up on his books against W. B. Monroe, who was a customer of his. The witness did not remember whether the defendant wrote the endorsement before or after the date was written by the witness.

The witness wrote the date on the order because he thought it ought to be dated to fix its status as an order for money, and as a memorandum. He paid the order because he thought it was genuine. After the defendant left, the witness again examined the order, and, becoming suspicious, went over to the Stokes Hotel, and there found that the defendant, who was passing at the hotel under the name of "Jones," was preparing to leave on the stage. The witness demanded an explanation of the defendant, detained him, and recovered part of his money. The defendant returned to the seller a new saddle he had purchased with a part of the money, and repaid the money to the witness, making all that the witness had advanced on the order.

The witness stated that he had been dealing in exchange for a number of years, and was familiar with the forms of orders, drafts, checks, and such papers as are used by banks. He was shown and identified the written instrument copied in the indictment, and stated that it was an order on him purporting to have been executed by W. B. Monroe for fifty-six dollars and fifty cents, and he so understood it when he paid the money it called for to the defendant.

Cross-examined, the witness stated that the mercantile and exchange firm of Marberry & Son was composed of his wife and son. He, however, had an interest in and superintended the business. The order was not dated when the defendant presented it. The witness put the date on it himself because he did not consider it good without the date. It was a business practice of the witness, when paying or filling orders for his customers which were not dated, to write the dates on them

himself.  He considered an undated order worthless, and would not pay one until it had been dated.  He required the defendant to endorse the order because it was his business custom, because endorsement shows that the endorser has received the substance of the order, and further, it fixes his liability as endorser.

On redirect examination, the witness stated that he was not a lawyer, and did not know whether a date was essential to the sufficiency of an order, nor whether such an order would be a sufficient voucher in the hands of the payor against the party making it.  He had always understood that every written document, in order to be valuable, should be dated.  If the order presented to the witness had been the genuine order of Mr. W. B. Monroe, and the witness had paid it without observing that it was undated, he would have claimed it as a valid order or voucher against Mr. Monroe on settlement, and would have compelled him to accept it if he could, even though a resort to litigation should become necessary.  The witness stated: "In explanation concerning my opinion about documents being dated, I wish to say that I do not know what the legal effect of a want of date to an instrument in writing would be, but in business we invariably refuse to handle papers that bear no date."

The State then introduced in evidence the written instrument that was identified by the witness W. F. Marberry as the order presented to him by the defendant.  In words and figures it reads as follows:

"*Mr. Marberry, sir:*
"Please pay to the barera $56.50 on my acct. and oblige
                                        "W. B. MONROE.
"Nov. 8, 1882."
"J. A. Boles" endorsed across the back.

The substance of the testimony of W. J. Stokes was that he was the proprietor of the hotel in Breckinridge.  The defendant took up quarters at his hotel on the seventh day of November, 1882.  On the morning of the eighth of November, he asked the witness for pen, ink and paper, saying that he wanted to write a letter.  The witness furnished him with a sheet of paper from a portfolio.  He wrote a little, tore a piece from the sheet of paper, and went out.  Presently he returned and said that he wanted to leave on the stage.  He had a saddle with him in a

sack. The witness, who was stage agent, asked him his name, to enter it on the stage way bill. He said that his name was "Jones," and the witness told him to enter it on his hotel register. He went to the register and wrote "W. H. Jones." About this time Mr. W. F. Marberry came in and asked him how it was that he was passing at the hotel under the name of "Jones," when he had just cashed an order under the name of "J. A. Boles." The defendant replied that he sometimes went under the name of "Boles," and sometimes under the name of "Jones." Marberry then detained the defendant.

The witness showed Mr. Marberry the remnant of the sheet of paper on which the defendant wrote that morning. The witness was here shown the alleged forged instrument, and stated that Marberry brought an order of the same tenor and substantially in the same writing, to the hotel, and the witness and Marberry matched it to the remnant left by the defendant after he finished his writing. The paper on which the order was written exactly matched the remnant in texture and appearance, and exactly fit in to complete the original sheet. The sheet was not torn straight, yet the fitting of the remnant and the order was complete. .The witness could not be certain that the order shown him on this trial was the same that Marberry brought to the hotel and compared, but the order Marberry brought to the hotel had Mr. Monroe's name signed to it, and was of the same tenor as this.

W. B. Monroe testified, for the State, that he was well acquainted with the defendant. He worked for the witness for several months just prior to his arrest in this matter. Having examined the order, the witness stated: "My name is signed to this order. I did not sign it. I did not authorize the defendant or anybody else to sign my name to this order, or to any other order. My name was not signed to this order by my consent."

Cross-examined, the witness stated that he had known the defendant since August, 1882. He first met the defendant in Kansas, while there selling horses, and had the defendant in his employ for a time in Kansas. The defendant came with the witness through the Indian Nation to Stephens county, Texas. The witness had considerable money with him on that trip. He then considered the defendant a trustworthy man, and had no fault to find with his deportment.

Here the State closed, electing to rest the case on the second count in the indictment.

L. L. Evans was the first witness called by the defendant. He testified that, as judge of the election at the Breckenridge box, he and his associates were up counting votes until after midnight on the night of November 7, 1882. At about two o'clock on that night, or, properly speaking, at that hour on the morning of the eighth, the witness went into the Paschal saloon, and saw the defendant lying on a bench at the back of the saloon, very drunk. Some of the "boys" staggered around and fell over him, but he did not wake up, or take any other notice of them.

J. J. Douglass testified, for the defense, that he saw the defendant at the Paschal saloon, after midnight on the night of November 7, 1882, very drunk, asleep, and apparently unconscious. He did not see him on the morning of the eighth until after his arrest.

W. J. Stokes, recalled by the State, testified that, when the defendant was at his house on the morning of November 8, 1882, and did the writing mentioned, he was perfectly sober and intelligent. The witness conversed with him, and was certain that he was not drunk. Nor did he appear to have been drinking.

W. F. Marberry, recalled by the State, testified that the defendant appeared perfectly sober and in his right mind on November 8, during the negotiations concerning the order. He did not appear to be drinking, or at all under the influence of liquor.

The charge of the court, as given, and the refusal to give special charges asked; the admission in evidence of the written instrument; the admission of the testimony of Marberry as to the changes he made in the original document; the testimony of witnesses as to the statement of the defendant as to his going by two different names; and testimony of the defendant's registry at the hotel as "Jones;" were the grounds assigned in motion for new trial.

*William Veale* and *A. M. Walthall*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

WHITE, P. J. Before the revision of our codes it was permissible in criminal pleading and practice to charge two or more offenses in separate counts of the same indictment; and the further rule was that, when the charges were substantially for the

same offense, and the several counts were introduced for the purpose of meeting the evidence as it might transpire, the State was not required to elect upon which count to proceed. (Clark's Crim. Laws of Texas, pp. 422, 426, and notes; *Dalton* v. *The State*, 4 Texas Ct. App., 333; see also 1 Archbold's Crim. Plead. and Prac., 8 ed., pp. 292, 295.)

By the revision we are given an express statute upon the subject, which reads that "an indictment or information may contain as many counts charging the same offense as the attorney who prepared it may think necessary to insert, and an indictment or information shall be sufficient if any one of its counts be sufficient." (Code Crim. Proc., Art. 433.)

Two counts are contained in the indictment in the case before us, viz., one for forgery, and one for uttering or passing a forged instrument knowing it to be forged. Motions to quash and in arrest of judgment were made, both touching the sufficiency of the indictment. The ground of the motion to quash was that the indictment was duplicitous and charged two offenses. "Duplicity in an indictment is the joinder of two or more distinct offenses in one count." (*Weathersby* v. *The State*, 1 Texas Ct. Appeals, 643.) Such was not the case here; but one offense was charged in either count. But it is urged that two separate and distinct felonies were charged in the same indictment, to-wit., forgery and uttering a forged instrument. Mr. Archbold says:

"If different felonies or misdemeanors be stated in several counts of an indictment, no objection can be made to the indictment on that account in point of law. In cases of felony, indeed, the judge in his discretion may require the counsel for the prosecution to select one of the felonies and confine himself to that. This is what is technically called putting the prosecution to his election." (1 Arch. Crim. Prac. and Plead., 8 ed., p. 295.)

"Offenses of the same character, though differing in degree, may be united in the same indictment, and the prisoner tried on both at the same time, and on the trial he may be convicted on the one and not upon the other, as murder and manslaughter, forging a check and for publishing it knowing it to be false." (Id., note.)

There is no inconsistency in charging forgery and uttering a forged instrument in separate counts in one indictment; because in their nature the offenses are very similar in character, though differing in the punishment affixed by statute. (Penal Code, Arts. 442 and 443.)

The court did not err in overruling the motion to quash. After the introduction of her evidence the State elected to claim a conviction only upon the second count, but it is to be noted that the first count was not stricken out nor abandoned, any further or for any purpose other than that a conviction would not be claimed thereunder for the forgery. It is now contended that by abandoning this first count the second was rendered insufficient of itself and did not charge any offense; and that the second count can only be made sufficient by reference to and supplying its defects from the allegations in the first count. Had the first count been stricken out on motion to quash or on demurrer, there might have been some plausibility in the position. But not having been stricken out, or abandoned for any other purpose than that a specific conviction would not be claimed under it, it was still for all other purposes a part of the indictment. This point was decided in *Wills* v. *The State,* 8 Mo., 52, in which case it was held that "Where an indictment contained two counts, on the first of which a *nolle prosequi* was entered, and the time of committing the offense was only averred by reference to the first count, the defendant might be tried and convicted on the second count, it (the first count) not being stricken out or rendered null as perhaps it would have been upon a demurrer sustained." (*Hutto* v. *The State,* 7 Texas Ct. App., 44.) Under the circumstances here shown, even if the second count had, as supposed, been insufficient, its defects could be supplied in the particulars mentioned, by reference to the allegations of the first count.

But it is further contended that the conviction should not stand because the evidence shows that the forged instrument, when first presented by defendant to Marberry, was without date, and that Marberry would not consent to take it without it was dated, he believing a date essential to the validity of such a writing. That Marberry then, with consent of defendant himself, wrote the date of the instrument, accepted it, and paid his money upon it. Whatever Marberry's peculiar views on the subject might have been, or however correct his objection in a commercial view, the instrument, if genuine, though without a date, would have created "*a pecuniary obligation*" upon the maker, and the affixing a date to it consequently did not affect defendant's liability under the law. (Penal Code, Arts. 431, 437.)

Defendant's guilt was most abundantly established by the

evidence, and we find no error in the rulings of the court below requiring a reversal of the judgment, which is affirmed.

*Affirmed.*

Opinion delivered March 21, 1883.